IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF OREGON

STEPHEN MCAULAY and
JANE MCAULAY,

        Plaintiffs,

                                3:13-CV-01611-PK

                                OPINION AND
v.                               ORDER

COUNTY OF WASHINGTON,
PAT GARRETT, Washington County Sheriff,
MIKE VARGAS, and
JORDAN WESTON,

        Defendants.
_____

PAPAK, Magistrate Judge:

      The question before the court is whether it is a violation of the Fourth or Fourteenth

Amendment for two sheriff's deputies, in a non-emergency situation, to ignore a "no trespassing"

sign and gain entry onto private property by walking around a locked gate for the purpose of

serving a civil summons.

      Plaintiffs Stephen McAulay ("Mr. McAulay") and Jane McAulay ("Ms. McAulay ") filed

this action against defendants the County of Washington, Washington County Sheriff Pat Garrett

("Garrett"), and sheriff's deputies Mike Vargas ("Vargas") and Jordan Weston ("Weston") on

July 30, 2013, in the Washington County Circuit Court of the State of Oregon.  On September

12, 2013, defendants removed this action to this court. Plaintiffs amended their complaint on

April 1, 2014. On May 30, 2014, defendants moved for summary judgment.

On May 23, 2012, deputies Vargas and Weston went to plaintiffs' property and served a

civil summons on Mr. McAulay. By and through their amended complaint, plaintiffs allege the

following based upon the manner in which Mr. McAulay was served with this summons: (i)

defendants are liable under 42 U.S.C. § 1983 for violating plaintiffs' Fourth Amendment rights to

be free from unreasonable searches and seizures and plaintiffs' Fourteenth Amendment

substantive due process rights by acting pursuant to "[t]he policy, practice and/or customs of

Washington County[, whereby] deputy sheriffs surreptitiously go onto the private property of its

citizens without prior notice, permission or lawful bases to serve people with documents," First

Amended Complaint, #16, ¶ 45; (ii) defendants Vargas and Weston are liable under Oregon

Revised Statute ("ORS") 164.245 for trespassing onto plaintiffs' property for the purpose of

serving a civil summons on Mr. McAulay; (iii) defendants Vargas and Weston are liable under a

theory of negligence per se for their unspecified negligent acts resulting from their intentional

trespass onto plaintiffs' property and defendant Washington County is liable for the deputies'

negligent actions under a theory of respondeat superior; (iv) defendants Vargas and Weston are

liable for intentional infliction of emotional distress for viewing Ms. McAulay through the

kitchen window while she was naked and defendants Washington County and Garrett are liable

for "ratif[ying]" Vargas and Weston's actions by "fail[ing] to take any remedial or termination

action against them" thereby "intend[ing] to cause Mrs. McAulay severe mental or emotional

distress," *id.*, ¶ 33; and (v) defendants Washington County, Vargas, and Weston are liable for

breaching "a special duty to the citizens of Oregon and more specifically Washington County

residents . . . to uphold, protect and enforce the laws of Oregon," *id.*, ¶ 36, by trespassing onto

plaintiffs' property and viewing Ms. McAulay through the kitchen window while she was naked

with "intentional or reckless disregard for Plaintiff[']s feelings while in this responsible

relationship," *id.*, ¶ 40.  This court has original jurisdiction over plaintiffs' federal claims

pursuant to 28 U.S.C. §§ 1331 and 1343 and has discretion to exercise supplemental jurisdiction

over plaintiffs' state law claims pursuant to 28 U.S.C. § 1367.

Now before the court is defendants' motion (#18) for summary judgment, in which

defendants argue that they are entitled to judgment on each of plaintiffs' claims as a matter of

law.  I have considered the motion and all of the pleadings and papers on file.  For the reasons set

forth below, I grant defendants' motion for summary judgment with regard to plaintiffs'

constitutional claims.  I decline to exercise supplemental jurisdiction over plaintiffs' remaining

state law claims and *sua sponte* remand those claims to state court pursuant to 28 U.S.C. §

1367(c).

## LEGAL STANDARD

Summary judgment is appropriate "if the movant shows that there is no genuine dispute

as to any material fact and the movant is entitled to judgment as a matter of law."  Fed. R. Civ. P.

56(a).  A party taking the position that a material fact either "cannot be or is genuinely disputed"

must support that position either by citation to specific evidence of record "including

depositions, documents, electronically stored information, affidavits or declarations, stipulations

(including those made for purposes of the motion only), admissions, interrogatory answers, or

other materials," by showing that the evidence of record does not establish either the presence or

absence of such a dispute, or by showing that an opposing party is unable to produce sufficient

admissible evidence to establish the presence or absence of such a dispute.  Fed. R. Civ. P. 56(c).

The substantive law governing a claim or defense determines whether a fact is material.  *See*

*Moreland v. Las Vegas Metro. Police Dep't*, 159 F.3d 365, 369 (9th Cir. 1998).

Summary judgment is not proper if material factual issues exist for trial. *See, e.g.,* *Celotex Corp. v. Catrett*, 477 U.S. 318, 322 (1986); *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986); *Warren v. City of Carlsbad*, 58 F.3d 439, 441 (9th Cir. 1995). In evaluating a motion for summary judgment, the district courts of the United States must draw all reasonable inferences in favor of the nonmoving party, and may neither make credibility determinations nor perform any weighing of the evidence. *See, e.g., Lytle v. Household Mfg., Inc.*, 494 U.S. 545, 554-555 (1990); *Reeves v. Sanderson Plumbing Prods., Inc.*, 530 U.S. 133, 150 (2000).

## MATERIAL FACTS[1]

Plaintiffs own a ten-acre parcel located in Gaston, Oregon, a rural area of Washington County, where they live with their young daughter. Defendant County of Washington is a political subdivision of the State of Oregon. The County operates and maintains a sheriff's department that serves the city of Gaston. Defendant Garrett was, at all material times, the Washington County Sheriff. His responsibilities included overseeing sheriff's office policy with regard to the use of deputy sheriffs as process servers. Defendants Vargas and Weston were, at all material times, Washington County sheriff's deputies and acting in that capacity to serve process on Mr. McAulay at his home in Gaston.

On May 23, 2012, Vargas was dispatched to the McAulays' home for the purpose of serving a summons on Mr. McAulay.[2] Because the McAulays' home was located in a rural area and Vargas had been advised that Mr. McAulay was not "cop friendly," Vargas requested backup. Weston responded to Vargas's request and accompanied Vargas to the McAulays' home.

---

[1] The following recitation constitutes my construal of the evidentiary record in light of the legal standard governing motions for summary judgment under Federal Rule of Civil Procedure 56.

[2] Vargas had been unsuccessful in an earlier attempt to serve the summons on Mr. McAulay on May 17, 2012.

When the deputies arrived at the McAulays' property, they found the front gate locked, blocking road access to the property, and a no trespassing sign posted on the gate. The deputies could not see the McAulays' residence from the gate. Vargas radioed dispatch, requesting that dispatch phone the McAulays to inform them that the deputies were at the entrance to their property and ask Mr. McAulay to meet them there. Dispatch placed the phone call, but no one answered, so dispatch left a message. Vargas and Weston then elected to walk around the locked gate and down the driveway to the McAulays' home.[3]

The McAulays' home is located approximately 548 feet from the front gate, following the driveway. The driveway proceeds in a more or less straight line for approximately the first 243 feet, where it becomes a semi-circle leading first to a detached garage and immediately thereafter to the house. The garage and the house are separated by a small garden bed. From the driveway, there are two footpaths to the front door of the house. From the perspective of approaching the house from the driveway, the first path goes left, following the length and back of the garden bed, and reaches a porch directly in front of the front door. This path does not pass the kitchen window. The second path goes to the right, following the front of the garden bed and reaching the porch at the front corner of the house. Following the porch to the right leads quickly to the kitchen window. Following the porch to the left leads to the front door.

Vargas and Weston approached the house via the second path. When they made it to the porch at the front corner of the house, one of the deputies, though neither Mr. McAulay nor Ms. McAulay could identify who, walked to the right and peered into the kitchen window. Ms. McAulay, who had just come out of the shower, was standing naked in the kitchen while drying her hair. The deputy saw Ms. McAulay then walked back to the corner of the porch and

---

[3] This required the deputies to walk through the brush on the side of the gate posts; they did not have to scale the gate or an adjoining fence to enter the property.

proceeded toward the front door. Before the deputies reached the door, Mr. McAulay opened it

and exited the house. Mr. McAulay confronted the deputies, telling them, "[i]f you're going to

wear the uniform, you should get a book on the law." Mr. McAulay's interaction with the

deputies continued without further incident. The deputies provided Mr. McAulay with their

business cards, served him with the summons, and left the property. This action followed.

## ANALYSIS

Defendants move for summary judgment on all claims. Defendants argue that all of

plaintiffs' claims rest on the erroneous premise that Vargas and Weston trespassed onto the

McAulays' property. Defendants claim that the deputies were privileged to enter the property for

the purpose of serving the summons and therefore all of the deputies' subsequent actions on the

property were legal. Defendants further argue that: (1) plaintiffs' Fourth Amendment claim fails

because the deputies did not search or seize any property or person while serving the summons,

(2) plaintiffs' Fourth Amendment claim precludes them from raising their Fourteenth

Amendment claim because the Fourth Amendment is a more specific constitutional provision,

(3) plaintiffs are precluded from pleading negligent torts where they have alleged that the

deputies' actions were intentional, (4) the deputies did not intend to cause emotional distress

through their actions nor did their behavior exceed the bounds of socially tolerable conduct, and

(5) the deputies did not establish a special relationship with plaintiffs by entering their property

for the purpose of serving a civil summons.

## I.    Plaintiffs' Fourth Amendment Claim

The Fourth Amendment provides, in relevant part, that the "right of the people to be

secure in their persons, houses, papers, and effects, against unreasonable searches and seizures,

shall not be violated." U.S. Const. amend. IV, § 1. "[T]he first Clause of the Fourth Amendment

"protects two types of expectations, one involving 'searches,' the other 'seizures.'" *Soldal v. Cook Cnty., Ill.*, 506 U.S. 56, 63 (1992), *quoting United States v. Jacobsen*, 466 U.S. 109, 113 (1984). Plaintiffs do not claim that Vargas and Weston seized Mr. McAulay or any of the McAulays' property; therefore the only issue before the court is whether the deputies performed a search within the meaning of the Fourth Amendment by trespassing onto the McAulays' property for the purpose of serving a summons on Mr. McAulay.

"Trespass alone does not qualify [as a search, rather it] must be conjoined with . . . an attempt to find something or obtain information."[4] *United States v. Jones*, 132 S. Ct. 945, 951 n.5 (2012). Accordingly, "[w]hen 'the Government obtains information by physically intruding' on persons, houses, papers, or effects, 'a search within the original meaning of the Fourth Amendment' has 'undoubtedly occurred.'" *United States v. Jardines*, 133 S. Ct. 1409, 1414 (2013), *quoting Jones*, 132 S. Ct. at 950-951. It follows, however, that a law enforcement officer has not conducted a search, for purposes of the Fourth Amendment, when he or she trespasses onto private property but does not attempt to obtain information therein. *See Jones*, 132 S. Ct. at 951; *Jardines*, 133 S. Ct. at 1414.

Plaintiffs argue that the deputies' actions constituted a search within the meaning of the Fourth Amendment because "[c]learly the intent of Vargas and Weston was to find something, in this case Mr. McAulay." Pl.'s Opposition, #22, at 7. Defendants take the position that the

---

[4] Plaintiffs acknowledge that "an actual trespass is neither necessary nor sufficient to establish a constitutional violation." *United States v. Karo*, 468 U.S. 705, 713 (1984). But where a trespass has occurred, as it arguably did when Vargas and Weston entered the McAulays' property, the court analyzes the alleged search under *Jones*, not under the *Katz v. United States*, 389 U.S. 347 (1967), reasonable expectation of privacy test. *See Jones*, 132 S. Ct. at 949-950; *United States v. Thomas*, 726 F.3d 1086, 1092 (9th Cir. 2013) ("Before [*Jones*], . . . courts typically said that a violation occurs when government officers violate a person's reasonable expectation of privacy." (citation omitted)).

service of summons was not a search, arguing that the deputies were not seeking to find incriminating evidence on the McAulays' property nor were they even specifically looking for Mr. McAulay (because, under state law for substitute service of process, they could have delivered the summons to anyone present at the McAulays' home who was at least fourteen years of age).

Vargas and Weston did not violate the McAulays' Fourth Amendment rights. As plaintiffs concede, the deputies' alleged trespass is not sufficient grounds for establishing the existence of a Fourth Amendment search. The deputies walked around the McAulays' locked gate and passed their no trespassing sign, but they did not attempt to obtain any information while intruding onto the McAulays' property. The deputies already knew all of the information they needed (Mr. McAulay's address) to perform the duty for which they had been dispatched. And plaintiffs do not allege that the deputies sought out other information while on the property, whether related to the summons or otherwise. Vargas and Weston were on the McAulays' property for a brief time, they did not engage Mr. McAulay in lengthy discussion (in fact there is no evidence that they engaged him in any inquisition at all besides, presumably, confirming his identity), and upon serving him with the summons they promptly left. These actions do not constitute a search under the Fourth Amendment. To be a search, the deputies would have had to trespass onto the McAulays' property and have attempted to obtain information during this trespass. Vargas and Weston did not attempt to obtain any information while on the McAulays' property; therefore they did not conduct a Fourth Amendment search.

Furthermore, it is untenable to suggest that a run-of-the-mill service of process—where an officer simply verifies an individual's name and then serves the summons—constitutes a Fourth Amendment search, much less an unreasonable search. If that were prohibited by the

Constitution, it would be effectively impossible to serve a civil summons by means of personal service because law enforcement officers would be prohibited from asking an individual to verify his or her own name for purposes of properly serving the summons. Personal service is permitted under federal and Oregon law, thus the actions necessary to complete personal service cannot constitute an unreasonable search.[5] *See* Fed. R. Civ. P. 4(e)(2); ORCP 7(D)(2). Accordingly, the McAulays' Fourth Amendment rights were not infringed by Vargas and Weston's actions.

## II.    Plaintiffs' Fourteenth Amendment Claim

Plaintiffs plead, but do not brief, that their Fourteenth Amendment substantive due process rights were violated when the deputies allegedly trespassed onto their property. The Fourteenth Amendment provides, in relevant part, that no state shall "deprive any person of life, liberty, or property, without due process of law." U.S. Const. amend. XIV, § 1. This provision, "guarante[es] more than fair process[, it] cover[s] a substantive sphere as well, barring certain government actions regardless of the fairness of the procedures used to implement them." *City of Sacramento v. Lewis*, 523 U.S. 833, 843 (1998) (citation omitted). To establish a substantive due process claim, plaintiffs "must show as a threshold matter that a state actor deprived [plaintiffs] of a constitutionally protected life, liberty or property interest." *Shanks v. Dressel*, 540 F.3d 1082, 1087 (9th Cir. 2008), *citing Action Apartment Ass'n, Inc. v. Santa Monica Rent Control Bd.*, 509 F.3d 1020, 1026 (9th Cir. 2007). Next, plaintiffs "must show a deprivation of that interest to have a cognizable Section 1983 claim" by virtue of "conscience shocking behavior by the government." *Brittain v. Hansen*, 451 F.3d 982, 991, 992 (9th Cir. 2006). However,

"if a constitutional claim is covered by a specific constitutional provision, such as

---

[5]  Plaintiffs do not allege that Oregon's service of process laws are unconstitutional.

the Fourth or Eighth Amendment, the claim must be analyzed under the standard appropriate to that specific provision, not under the rubric of substantive due process." Substantive due process analysis is therefore inappropriate . . . if [plaintiffs'] claim is 'covered by' the Fourth Amendment.

*Lewis*, 523 U.S. at 843, *quoting United States v. Lanier*, 520 U.S. 259, 272 n.7 (1997).

Plaintiffs are precluded from raising their Fourteenth Amendment claim. While, as discussed above, I do not find relief for plaintiffs under the Fourth Amendment, plaintiffs allege that they suffered a violation of their Fourteenth Amendment rights as a result of Vargas and Weston's unlawful search for Mr. McAulay. Because their Fourteenth Amendment claim rests on the same facts and legal premise as their Fourth Amendment claim, plaintiffs cannot bring a separate Fourteenth Amendment claim. *See id.*

## III.    Plaintiffs' Remaining Claims

Plaintiffs raise additional state law claims, including that Vargas and Weston's actions constituted: (1) a trespass onto the McAulays' property, (2) negligence per se, (3) intentional infliction of emotional distress for viewing Ms. McAulay while she was standing naked in the kitchen, and (4) negligent infliction of emotional distress for breaching a special duty relationship between the sheriff's department and Washington County residents. Defendants respond that none of plaintiffs' claims are actionable because Vargas and Weston were privileged to enter onto the McAulays' property for the purpose of performing their official duty as process servers.

"The district courts may decline to exercise supplemental jurisdiction over a [state law] claim . . . if . . . the district court has dismissed all claims over which it has original jurisdiction." 28 U.S.C. § 1367(c)(3); *see also Carnegie-Mellon Univ. v. Cohill*, 484 U.S. 343, 350 n.7 (1988) ("[I]n the usual case in which all federal-law claims are eliminated before trial, the balance of the factors to be considered under the pendent jurisdiction doctrine—judicial economy, convenience,

fairness, and comity—will point toward declining to exercise jurisdiction over the remaining state-law claims."). Here, plaintiffs' remaining claims are brought under state law. The question of whether, under Oregon law, law enforcement officers are privileged, in non-emergency situations, to trespass onto private property for the purpose of serving a civil summons is a novel question. It is more appropriate for the state courts of Oregon to resolve whether such a privilege exists or will be extended to these facts than it is for a federal court to recognize this privilege. Accordingly, I decline to exercise supplemental jurisdiction over plaintiffs' remaining state law claims and *sua sponte* remand those claims to state court pursuant to 28 U.S.C. § 1367(c)..

**CONCULSION**

For the reasons set forth above, defendants' motion for summary judgment is granted as to plaintiffs' constitutional claims and plaintiffs' remaining claims are remanded to state court. A final judgment shall be prepared.


Dated this 15th day of August, 2014.

Honorable Paul Papak
United States Magistrate Judge